1  SEYFARTH SHAW LLP
   Aaron R. Lubeley (SBN 199837)
2  alubeley@seyfarth.com
   Simon L. Yang (SBN 260286)
3  syang@seyfarth.com
   601 South Figueroa Street, Suite 3300
4  Los Angeles, California 90017
   Telephone:  (213) 270-9600
5  Facsimile:  (213) 270-9601

6  Attorneys for Defendant
   AIRPORT TERMINAL SERVICES, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| DARIUS MAYES, an individual, on behalf of himself and others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 50, inclusive,<br><br>　　　　　Defendants. | Case No. 2:19-cv-10914<br><br>**DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1367, 1441, 1446, AND 1453**<br><br>Los Angeles Superior Court Case No. 19STCV41870<br><br>Complaint Filed:　　November 21, 2019 |

DEFENDANT'S NOTICE OF REMOVAL

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendant, Airport Terminal Services, Inc., files this notice of removal based on jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), among other grounds,[1] to effect the removal of the above-captioned action from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California. Among other grounds, removal is proper for the following reasons:

## BACKGROUND AND PROCEEDINGS IN STATE COURT

1. On November 21, 2019, Plaintiff, Darius Mayes, filed a purported class action complaint in the Superior Court of the State of California for the County of Los Angeles, titled "*DARIUS MAYES, an individual, on behalf of himself and others similarly situated, vs. AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 50, inclusive*," and assigned Case No. 19STCV41870.

2. The complaint alleges ten causes of action against Defendant: (1) "Failure to Pay Minimum Wages and for all hours worked"; (2) "Failure to Pay Wages and Overtime Under Labor Code § 510"; (3) "Meal Period Liability Under Labor Code § 226.7"; (4) "Rest-Break Liability Under Labor Code § 226.7"; (5) "Violation of Labor Code § 226(a)"; (6) "Violation of Labor Code § 221" for unlawful kickbacks from wages; (7) "Violation of Labor Code § 204" for untimely payment of wages during employment; (8) "Violation of Labor Code § 203" for untimely payment of wages upon termination; (9) "Failure to Reimburse Necessary Business Expenses under Labor Code § 2802"; and (10)

---

[1] Pursuant to 28 U.S.C. § 1331, federal question jurisdiction also exists to the extent certain claims are barred by federal preemption under the Airline Deregulation Act, 49 U.S.C. § 40101 *et seq.*, Federal Aviation Administration Authorization Act, 49 U.S.C. § 14501(c), or other federal laws. *E.g., Hall v. North Am. Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007) (conferring jurisdiction when federal law completely preempts a particular area of law). Moreover, pursuant to 28 U.S.C. § 1367(a), if any claims were not subject to the Court's original jurisdiction under 28 U.S.C. §§ 1331 and 1332, supplemental jurisdiction over such claims would exist.

"Violation of Business & Professions Code § 17200, *et seq.*" based on the previously alleged Labor Code violations. The complaint seeks to certify a class of "[a]ll individuals employed by Defendants at any time [since November 21, 2015] and who have been employed as non-exempt, hourly airport services employees based out of Defendant's facilities and offices within the State of California." Compl. ¶ 44.

3. On November 27, 2019, Plaintiff served the complaint on Defendant, and at that time also served a summons, civil case cover sheet, and notice of case assignment. A true and correct copy of the summons, complaint, civil case cover sheet, and notice of case assignment is attached as **Exhibit A**.

4. On December 27, 2019, Defendant filed and served its answer to the complaint. A true and correct copy of the answer is attached as **Exhibit B**.

5. Upon information and belief, on or about December 17, 2019, Defendant alleges the state court filed a minute order and initial status conference order. As of the date of this filing, Defendant is not aware of any service of the minute order and initial status conference order upon Defendant. Nonetheless, prior to filing this removal, Defendant obtained a copy of the minute order and initial status conference order, a true and correct copy of which is attached as **Exhibit C**.

6. The exhibits attached to this notice of removal constitute all process, pleadings, and orders served upon (and filed by or obtained by) Defendant in this action.

## TIMELINESS OF REMOVAL

7. On November 27, 2019, Defendant's agent of service received personal service of the summons and complaint. This notice of removal is filed within 30 days of Defendant's receipt of the summons and complaint and within one year of the commencement of this action. *See* 28 U.S.C. § 1446(b); *see also Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (explaining the time for filing a notice of removal does not run until a party has been formally served with the summons and complaint under applicable state law).

**CLASS ACTION FAIRNESS ACT JURISDICTION**

8. The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because (i) it is alleged as a class action for putative classes in excess of 100 individuals; (ii) for removal purposes, there is complete diversity between Plaintiff, a citizen of the State of California, and Defendant, a citizen of the State of Missouri; and (iii) while Defendant denies liability as to Plaintiff's claims and ability to certify a class action, the amount in controversy alleged in the complaint exceeds $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d).

### I. Number of Putative Class Members

9. CAFA jurisdiction requires that the aggregated number of members of all classes proposed in a complaint be at least 100. 28 U.S.C. § 1332(d)(5)(B).

10. Here, the complaint seeks to certify a class of "[a]ll current and former non-exempt employees of Defendant in California [since October 22, 2015]." Compl. ¶ 24. Based on a review of Defendant's records, each class proposed in the complaint involves more than 100 individuals. Declaration of Simon L. Yang ("Yang Decl.") ¶ 2. Indeed, since October 22, 2015, more than 500 individuals have worked as non-exempt employees in California for Defendant. *Id.*

11. Accordingly, the aggregated number of members of the putative classes proposed by Plaintiff far outnumbers the 100 member requirement.

### II. Diversity of Citizenship

12. CAFA requires only minimal diversity for the purpose of establishing federal jurisdiction; that is, at least one purported class member must be a citizen of a State different from any named defendant. 28 U.S.C. 1332(d)(2)(A); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (explaining that to achieve its purposes CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement in 28 U.S.C. § 1332(d)(2)). Here, such

minimal diversity exists among the parties. In fact, complete diversity exists between Plaintiff and Defendant.

### A. Plaintiff Is a Citizen of California.

13. Plaintiff is a resident of the State of California. Compl. ¶ 2. ("Plaintiff is a resident of California and Los Angeles County, and during the time period relevant to this Complaint, was employed by Defendants as a non-exempt hourly airport ground services employee within the State of California."). For purposes of removal, Plaintiff also is a citizen of the State of California based on his domicile.

14. For purposes of diversity jurisdiction, a natural person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Here, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). A person's domicile is the place he or she resides with the intent to remain indefinitely. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *see also Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002). Residence is prima facie evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 29 F.3d 514, 520 (10th Cir. 1994). Similarly, under 28 U.S.C. § 1391(c), Plaintiff resides in the State in which he is domiciled.

15. Moreover, based on information from Plaintiff's personnel file and information submitted to Defendant throughout the course of Plaintiff's employment and thereafter, Plaintiff has listed a California address as his current address. Further, on information and belief, Plaintiff continues to reside and work in (and thus has "an intent to remain" in) the State of California. Neither Plaintiff nor Plaintiff's counsel has provided an address in any other State or indicated that Plaintiff does not intend to remain domiciled in California. Accordingly, Plaintiff is a citizen of the State of California for purposes of diversity jurisdiction.

### B. Defendant Is a Citizen of Missouri.

16. Defendant is now, and was at the time of the filing of this action, a citizen of a State other than California within the meaning of 28 U.S.C. § 1332(c)(1).

17. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Defendant is now, and was at all relevant times, incorporated under the laws of the State of Missouri. Declaration of Jeff Luetkenhaus ("Luetkenhaus Decl.") ¶ 2.

18. With respect to Defendant's principal place of business, a corporation's "principal place of business" for purposes of diversity jurisdiction is the corporation's "nerve center":

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters -- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center" … .

*The Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

19. Here, Defendant's headquarters is located at 940 Westport Plaza Drive, Suite 101, St. Louis, Missouri 63146. Luetkenhaus Decl. ¶ 2. Defendant's corporate officers, including the Chief Executive Office, President, and Vice President of Employee Services, for example, work from this headquarters in St. Louis, Missouri. *Id.* These individuals comprise Defendant's senior management and are responsible for the direction, control, and coordination of Defendant's corporate planning and strategy. *Id.* **None** of Defendant's senior management works out of California. *Id.*

20. As Defendant is incorporated in the State of Missouri and its "actual center of direction, control, and coordination" or "nerve center" is in St. Louis, Missouri, Defendant is a citizen of the State of Missouri for purposes of diversity jurisdiction. *The Hertz Corp.*, 559 U.S. 77 at 92-93. Accordingly, Defendant is not now, and was not at the time of the filing of the Complaint, a citizen of the State of California.

### C. The Citizenship of Doe Defendants Is Disregarded.

21. The residence of fictitious and unknown defendants is to be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332. 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1191 n.1 (9th Cir. 1988) (doe defendants need not join in removal).

### III. Amount in Controversy

22. Defendant specifically denies any liability as to Plaintiff's claims and any ability for this action to proceed on a class or representative basis. While the complaint or certain causes of action alleged therein do not even comply with federal pleading standards under *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014), and fail to "contain sufficient factual content" to allow Defendant or the Court to infer "that the defendant is liable for the misconduct alleged," Defendant has a reasonable, good-faith belief that the amount in controversy, as alleged in the complaint, easily exceeds $5,000,000.00, exclusive of interest and costs.

23. In calculating the amount in controversy under CAFA, the claims of the individual members of a class are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.00. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep, S. Rep. No. 109-14, at 42 (2005).[2]

---

[2] Any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case … . Overall, § 1332(d) was intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read

6

24. The complaint alleges ten causes of action against Defendant: (1) "Failure to Pay Minimum Wages and for all hours worked"; (2) "Failure to Pay Wages and Overtime Under Labor Code § 510"; (3) "Meal Period Liability Under Labor Code § 226.7"; (4) "Rest-Break Liability Under Labor Code § 226.7"; (5) "Violation of Labor Code § 226(a)"; (6) "Violation of Labor Code § 221" for unlawful kickbacks from wages; (7) "Violation of Labor Code § 204" for untimely payment of wages during employment; (8) "Violation of Labor Code § 203" for untimely payment of wages upon termination; (9) "Failure to Reimburse Necessary Business Expenses under Labor Code § 2802"; and (10) "Violation of Business & Professions Code § 17200, *et seq.*" based on the previously alleged Labor Code violations. The complaint seeks to certify a class of "[a]ll individuals employed by Defendants at any time [since November 21, 2015] and who have been employed as non-exempt, hourly airport services employees based out of Defendant's facilities and offices within the State of California." Compl. ¶ 44.

25. Here, satisfying the amount-in-controversy threshold need not even consider all of Plaintiff's claims. Indeed, based on the complaint's allegations, the Court's findings in prior matters, and Defendant's employment records, the $5,000,000.00 amount-in-controversy threshold is easily exceeded, without even considering all of Plaintiff's putative class claims.[3]

26. Indeed, the amount in controversy from the first and tenth cause of action for unpaid wages damages and restitution alone present nearly two-thirds the jurisdictional threshold. Moreover, the amount in controversy from the seventh cause of action for waiting-time penalties alone would exceed the jurisdictional threshold of $5,000,000.

---

broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

[3] As the Supreme Court recently made clear, "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87-88 (2014) ("[W]hen a defendant seeks federal court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court."). "[T]he Supreme Court left no doubt 'that no anti-removal presumption attends cases involving CAFA.'" *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015).

Likewise, the amount in controversy from the third and fourth causes of action for meal and rest break violations alone also would exceed the jurisdictional threshold of $5,000,000. When considering all of Plaintiff's causes of action, the complaint in aggregate clearly alleges an amount in controversy in excess of $5,000,000.

### A.   Alleged Waiting-Time Penalties

27.   The complaint's eighth cause of action alleges that putative class members were not timely paid at the end of their employment. Such an employee's wages "continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to 30 days. Lab. Code § 203(a). The statute of limitations for waiting-time penalties claims is three years. Lab. Code § 203(b).

28.   Here, the complaint fails to specifically allege when or how often such violations but broadly alleges that Defendant's practices have "resulted in systematic and ongoing violations" for failure to pay all wages, based on "off-the-clock" work. Compl. ¶ 10. Indeed, Plaintiff alleges unpaid wages are due for off-the-clock work, which resulted because "Plaintiff was required to ensure he was at the airport by at least half an hour before his shift." Compl. ¶ 12. The complaint alleges putative class claims on behalf of employees who also worked at airports. Compl. ¶ 44.

29.   Even if assuming that Defendant paid its employees the minimum lawful wage of $12.00 per hour, the alleged practices that have "resulted in systematic and ongoing violations" for failure to pay all wages, based on "off-the-clock" work each day before an employee could begin working, would allege more than $5,000,000 in waiting-time penalties with just 1,737 formerly employed putative class members.[4]

30.   Based on a review of Defendant's employment records from November 21, 2016, through March 6, 2018, and extrapolating to the present, the number of former employee putative class members easily exceeds 1,737. Yang Decl. ¶ 2.[5] Accordingly,

---

[4] 1,737 formerly employed putative class members * 30 days * 8 hours per day * $12.00 per hour = $5,002,560.

[5] Indeed, as the Court explained in a prior class action alleging putative class claims for waiting-time penalties, the potential recovery for the waiting-time penalty claim alone would exceed the jurisdictional threshold of $5,000,000. *Pederson v. Airport Terminal*

8

the amount in controversy for waiting-time penalties alone exceeds the jurisdictional threshold.

### B.   Penalties for Alleged Meal and Rest Break Violations

31.   The complaint's third cause of action alleges violations of California's meal break requirements. The complaint's fourth cause of action alleges violations of California's rest break requirements. Although the complaint alleges a variety of individualized bases for meal and rest break violations, the complaint also alleges all meal and rest breaks were unlawful, since "Plaintiff and the Class members were also not permitted to leave their work premises." Compl. ¶ 89.

32.   Labor Code § 226.7(c) provides an employee an additional hour of pay for each day meal breaks are not provided in compliance with applicable entitlements under California law. Labor Code § 226.7(c) also provides an employee an additional hour of pay for each day rest breaks are not authorized and permitted in compliance with applicable entitlements under California law. The applicable statute of limitations for violations of meal and rest break requirements is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1105 (2007).

33.   Here, the complaint fails to specifically allege when or how often such violations occurred but broadly alleges that Defendant never provided any lawful breaks, since even the meal and rest breaks Defendant provided would allegedly be unlawful, since "Employees were required to remain under Defendants' control and were not provided with the opportunity to take full uninterrupted and duty-free rest periods and meal breaks." Compl. ¶ 3. Even if assuming that Defendant paid its employees the minimum lawful wage of $12.00 per hour, the alleged practice that "uniformly" failed to provide lawful meal and rest breaks, regardless of whether a meal or rest break was

---

*Services, Inc.*, C.D. Cal. Case No. 5:15-cv-02400-VAP-SP (August 3, 2018), Dkt. 43 (stating waiting-time penalties would exceed $10 million if the entire putative class could establish liability).

9

DEFENDANT'S NOTICE OF REMOVAL

provided in fact, would allege more than $5,000,000 in controversy with just 185 putative class members working per day since November 21, 2016.[6]

34. Based on a review of Defendant's employment records, since November 21, 2016, the number of putative class members who worked each day for Defendant easily exceeds 185. Yang Decl. ¶ 2. Accordingly, the amount in controversy for meal and rest break violations alone exceeds the jurisdictional threshold.

### C. Damages or Restitution for Allegedly Unpaid Wages

35. The complaint's first cause of action and tenth cause of action allege that putative class members were not paid all wages. The statute of limitations for recovering unpaid wages as damages under the first cause of action is three years. *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1105 (2007). The statute of limitations for recovering unpaid wages as restitution under the tenth cause of action is four years. Bus. & Prof. Code § 17208.

36. Again, the complaint fails to specifically allege when or how often such violations but broadly alleges that Defendant's practices have "resulted in systematic and ongoing violations" for failure to pay all wages, based on "off-the-clock" work. Compl. ¶ 10. Indeed, Plaintiff alleges unpaid wages are due for off-the-clock work, which resulted because "Plaintiff was required to ensure he was at the airport by at least half an hour before his shift." Compl. ¶ 12. The complaint alleges putative class claims on behalf of employees who also worked at airports. Compl. ¶ 44. Plaintiff and putative class members thus allegedly were not paid all wages on each work day. Moreover, the complaint alleges Plaintiff and putative class members are also entitled to liquidated damages in an equal amount to any unpaid wages. Compl. ¶ 67.

37. Even if assuming that Defendant paid its employees the minimum lawful wage of $12.00 per hour, the alleged practices that have "resulted in systematic and ongoing violations" for failure to pay all wages, based on "off-the-clock" work each day

---

[6] 185 putative class members per day * 1,131 days from November 21, 2016, to December 27, 2019 * $24 per day ($12 for a missed meal break and $12 for a missed rest break) = $5,021,640.

before an employee could begin working, would allege more than $3.3 million in unpaid wages and liquidated damages with just 185 putative class members working each day.[7]

38. Based on a review of Defendant's employment records, the number of putative class members who worked each day for Defendant easily exceeds 185. Yang Decl. ¶ 2. Accordingly, the amount in controversy for unpaid wages as damages or restitution alone establishes approximately two-third of the jurisdictional threshold.

### D. Overall Amount in Controversy

39. Without even considering additional amounts in controversy for (i) the second cause of action for "Failure to Pay Wages and Overtime Under Labor Code § 510"; (ii) the fifth cause of action for "Violation of Labor Code § 226(a)"; (iii) the sixth cause of action for "Violation of Labor Code § 221" for unlawful kickbacks from wages; (iv) the seventh cause of action for "Violation of Labor Code § 204" for untimely payment of wages during employment; (v) the ninth cause of action of "Failure to Reimburse Necessary Business Expenses under Labor Code § 2802"; or potential attorneys' fees and costs, the complaint places an amount in controversy that easily exceeds $5,000,000. Consideration of the remaining claims thus is unnecessary, given that the amount in controversy clearly exceeds $5,000,000.

## IV. Entitlement to CAFA Removal

40. Because the complaint is filed as a class action for a putative class of more than 100 individuals, complete diversity of citizenship exists between Plaintiff and Defendant, and the amount in controversy plainly exceeds $5,000,000, this Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2).[8] This action is proper for removal to this Court pursuant to 28 U.S.C. § 1441(a).

---

[7] 1,497 days from November 21, 2015, through December 27, 2019 * 30 unpaid minutes * 1 hour per 60 minutes * $12.00 per hour = $1,661,670.00 in unpaid wages. An equal amount of liquidated damages are also alleged for a total of $3,323,340.

[8] In addition to federal jurisdiction under CAFA, "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This Court has original jurisdiction over this action based on federal question jurisdiction to the extent that the action asserts claims barred by or preempted by federal law under, among others, the Airline Deregulation Act, 49 U.S.C. § 40101 *et seq.*, and Federal Aviation Administration Authorization Act, 49

11

## SUPPLEMENTAL JURISDICTION

41. To the extent any of the claims alleged in the complaint do not have an independent basis for federal jurisdiction, the claims are within the supplemental jurisdiction of the Court, in that they are so related to the claims subject to federal jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). Thus, this action is removable in its entirety.

## VENUE

42. This action was brought in the Superior Court of the State of California for the County of Los Angeles. Venue thus lies in the United States District Court for the Central District of California, Western Division, because it is the "district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §§ 1441(a); *see also* 28 U.S.C. §§ 84(c)(2), 1390(c).

## NOTICE TO STATE COURT AND TO PLAINTIFF

43. A true and correct copy of this notice of removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles. 28 U.S.C. § 1446(d).

## PRAYER FOR REMOVAL

44. WHEREFORE, Defendant prays that this civil action be removed from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California, Western Division.

DATED: December 27, 2019            SEYFARTH SHAW LLP

By: */s/ Simon L. Yang*
　　Aaron R. Lubeley
　　Simon L. Yang
　Attorneys for Defendant
　AIRPORT TERMINAL SERVICES, INC.

---

U.S.C. § 14501(c). *Hall v. North Am. Van Lines, Inc.*, 476 F.3d 683, 687 (9th Cir. 2007) (conferring jurisdiction when federal law completely preempts a particular area of law).