# EXHIBIT A

 CT Corporation

**Service of Process Transmittal**
11/27/2019
CT Log Number 536722482

**TO:**  BRANDY WALLACE
Airport Terminal Services, Inc.
940 WEST PORT PLAZA DRIVE, SUITE 101
SAINT LOUIS, MO 63146-3014

**RE:**  **Process Served in California**

**FOR:**  Airport Terminal Services, Inc.  (Domestic State: MO)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | DARIUS MAYES, an individual, on behalf of himself and others similarly situated, Pltf. vs. AIRPORT TERMINAL SERVICES, INC, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summon, Complaint, Order, Motion, Attachment(s) |
| **COURT/AGENCY:** | Los Angeles County - Superior Court, CA Case # 19STCV41870 |
| **NATURE OF ACTION:** | Employee Litigation - Notice of Defendant |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 11/27/2019 at 14:27 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days |
| **ATTORNEY(S) / SENDER(S):** | David Yeremian DAVID YEREMIAN & ASSOCIATES, INC. 535 N. Brand Blvd., Suite 705 Glendale, CA 91203 818-230-8380 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780122034872 |
| | Image SOP |
| | Email Notification,  BRANDY WALLACE  bwallace@atsstl.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 208 LaSalle Ave Suite 814 Chicago, IL 60604 |
| **For Questions:** | 866-539-8692 CorporationTeam@wolterskluwer.com |

Page 1 of  1 / HS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**COPY**

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and
DOES 1 through 50, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DARIUS MAYES, an individual on behalf of himself and all others
similarly situated

| FOR COURT USE ONLY |
|---|
| *(SOLO PARA USO DE LA CORTE)* |

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

**NOV 21 2019**

Sherri R. Carter, Executive Officer/Clerk of Court

By _____, Deputy
Steven Drew

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Stanley Mosk Courthouse<br><br>111 North Hill Street<br>Los Angeles, CA 90012 | CASE NUMBER:<br>*(Número del Caso):*<br>**19STCV41870** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David Yeremian, 535 N Brand Blvd., Suite 705, Glendale, CA 91203; P: (818) 230-8380

| DATE:<br>*(Fecha)* **NOV 21 2019** | Sherri R. Carter, Clerk<br>Clerk, by<br>*(Secretaria)* __**STEVEN DREW**__ | , Deputy<br>*(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Airport Terminal Services, Inc., a Missouri corporation

under: ☒ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
       ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
       ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
       ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

**COPY**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>Alvin B. Lindsay (220236)<br>David Yeremian & Associates Inc.<br>535 N. Brand Blvd., Suite 705<br>Glendale, CA 91203 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (818) 230-8380   FAX NO.: (818) 230-0308<br>ATTORNEY FOR *(Name):* Plaintiff, Darius Mayes | CONFORMED COPY<br>ORIGINAL FILED<br>Superior Court of California<br>County of Los Angeles<br>**NOV 21 2019**<br>Sherri R. Carter, Executive Officer/Clerk of Court<br>By _____, Deputy<br>Steven Drew |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Los Angeles**
STREET ADDRESS: 111 N Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk Courthouse

CASE NAME:
Mayes v. Airport Terminal Services, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER:<br>**19STCV41870** |
|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**BY FAX**

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Ten (10)
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: November 20, 2019
Alvin B. Lindsay
_____         ▶ _____
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

**COPY**

| SHORT TITLE: Mayes v. Airport Terminal Services, Inc. | CASE NUMBER **19STCV41870** |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Court Filing Location (Column C) |
|---|

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|
| **Auto Tort** Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** Asbestos (04) | ☐ A6070  Asbestos Property Damage | 1, 11 |
| | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11 |
| Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1, 4, 11 |
| | ☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11 |
| Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1, 4, 11 |
| | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1, 4, 11 |
| | ☐ A7270  Intentional Infliction of Emotional Distress | 1, 4, 11 |
| | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Mayes v. Airport Terminal Services, Inc. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/ Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☑ A6024  Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
| | | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation    Number of parcels_____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
| | | ☐ A6032  Quiet Title | 2, 6 |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Mayes v. Airport Terminal Services, Inc. | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

| SHORT TITLE: Mayes v. Airport Terminal Services, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases.)

| REASON: ☑ 1. ☐ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☐ 9. ☐ 10. ☐ 11. | ADDRESS: |
|---|---|

| CITY: | STATE: | ZIP CODE: |
|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the _Central_ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: _November 20, 2019_

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

# COPY

1
DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)

2
david@yeremianlaw.com
Alvin B. Lindsay (SBN 220236)

3
alvin@yeremianlaw.com
535 N. Brand Blvd., Suite 705

4
Glendale, California 91203
Telephone: (818) 230-8380

5
Facsimile: (818) 230-0308

6
Attorneys for Plaintiff DARIUS MAYES,
on behalf of himself and others similarly situated

7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

NOV 21 2019

Sherri R. Carter, Executive Officer/Clerk of Court
By _____, Deputy
Steven Drew

8
**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9
**FOR THE COUNTY OF LOS ANGELES**

10
DARIUS MAYES, an individual, on behalf of himself and others similarly situated,

11
Plaintiff,

12
vs.

13

14
AIRPORT TERMINAL SERVICES, INC., a Missouri corporation; and DOES 1 through 50, inclusive,

15

16
Defendants.

Case No.: **19STCV41870**

CLASS ACTION

Assigned for All Purposes To:
Hon.
Dept.:

**CLASS ACTION COMPLAINT FOR:**

1. Failure to Pay Minimum Wages and for all hours worked;
2. Failure to Pay Wages and Overtime Under Labor Code § 510;
3. Meal Period Liability Under Labor Code § 226.7;
4. Rest-Break Liability Under Labor Code § 226.7;
5. Violation of Labor Code § 226(a)
6. Violation of Labor Code § 221;
7. Violation of Labor Code § 204;
8. Violation of Labor Code § 203;
9. Failure to Reimburse Necessary Business Expenses under Labor Code § 2802; and
10. Violation of Business & Professions Code § 17200 *et seq.*

**DEMAND FOR JURY TRIAL**

**BY FAX**

- 1 -
CLASS ACTION COMPLAINT

1    Plaintiff DARIUS MAYES (hereinafter "Plaintiff"), on behalf of himself and all other

2    similarly situated non-exempt, hourly airport services workers employed by Defendants in

3    California (collectively, "Employees"; individually, "Employee") complains of Defendants, and

4    each of them, as follows:

5                                          **INTRODUCTION**

6          1.        Plaintiff brings this action on behalf of himself and all other similarly situated

7    current and former Employees within the State of California who, at any time from four (4) years

8    prior to the filing of this lawsuit, are or were employed based out of the facilities and offices

9    operated in California airports by Defendants AIRPORT TERMINAL SERVICES, INC., a

10   Missouri corporation; and DOES 1 through 50, inclusive (all defendants being collectively

11   referred to as "Defendants"). Plaintiff alleges that Defendants, and each of them, violated various

12   provisions of the California Labor Code, relevant orders of the Industrial Welfare Commission

13   ("IWC"), and the California Business & Professions Code, and seeks redress for these violations.

14         2.        Plaintiff is a resident of California and Los Angeles County, and during the time

15   period relevant to this Complaint, was employed by Defendants as a non-exempt hourly airport

16   ground services employee within the State of California at Defendants' facilities at Los Angeles

17   International Airport ("LAX") and within the County of Los Angeles. Defendants operate

18   facilities in California airports where they employ Plaintiff and the Class members in connection

19   with their ground handling services provided to airlines and airport customers. Plaintiff and the

20   other similarly situated Employees of Defendants worked based out of Defendants' facilities and

21   offices at Defendants' behest without being paid all wages due and without being provided all

22   their required meal periods and rest breaks. Upon information and belief, Plaintiff was employed

23   by Defendants and (1) shared similar job duties and responsibilities; (2) was subjected to the same

24   policies and practices; and (3) endured similar violations at the hands of Defendants as the other

25   Employee Class members who served in similar and related positions.

26         3.        Defendants required Plaintiff and the Employees in the Class to work off the clock

27   and failed to record accurate time worked by these Employees, failed to pay them at the

28   appropriate rates for all hours worked, failed to pay all wages due and owing at termination or

resignation, and provided Plaintiff and the Class members with inaccurate wage statements that prevented them from learning of these unlawful pay practices. Defendants also failed to provide Plaintiff and the Class with lawful meal and rest periods, as Employees were required to remain under Defendants' control and were not provided with the opportunity to take full uninterrupted and duty-free rest periods and meal breaks, as required by the Labor Code and the applicable paragraphs of the IWC Wage Orders.

4.    Defendant AIRPORT TERMINAL SERVICES, INC. ("ATSI") is a Missouri corporation which lists is principal executive offices with the California Secretary of State in St. Louis, Missouri and does not list a California address. It lists its type of business as "Provider of Services." ATSI employed Plaintiff and the Class members during the time period relevant to this Complaint, and was listed as the employer on the wage statements issued to Plaintiff, and upon information and belief, the other Class members.

5.    The web-site for ATSI explains it "is an aviation services company with over 40 years of experience providing exceptional service to airline and airport customers." To that end, ATSI explains that employees in its ground handling services division provide customer services, ramp handling, de-icing, cabin cleaning, cargo services, and aircraft fueling. Other divisions also provide client travel services and lounge services, and ATSI explains that its employees work based out of ATSI facilities and offices at the following California airports: San Francisco (SFO), Oakland (OAK), San Jose (SJC), Los Angeles (LAX), Santa Ana (SNA), San Diego (SAN), Palm Springs (PSP), and Ontario (ONT). Plaintiff worked for Defendants based out of the ATSI facilities located at LAX, and served in various non-exempt, hourly positions, including ramper or ramp agent, ramp crew-chief, and ramp supervisor. Plaintiff worked with Class members employed by ATSI in those and other related positions, including cabin services employees and supervisors and baggage services agents and mechanics. Defendants employ the Class members based out of ATSI's facilities at the above listed California airports in hourly, non-exempt positions and in related positions under its ground handling services operations.

6.     This Court has jurisdiction over this Action pursuant to California Code of Civil Procedure § 410.10 and California Business & Professions Code § 17203. This Action is brought as a Class Action on behalf of similarly situated Employees of Defendants pursuant to California Code of Civil Procedure § 382. Venue as to Defendants is also proper in this judicial district pursuant to California Code of Civil Procedure § 395 *et seq*. Upon information and belief, the obligations and liabilities giving rise to this lawsuit occurred, at least in part in Los Angeles County, and Defendants operate offices where Plaintiff was employed in the County of Los Angeles, thus employing Plaintiff and other Class members in Los Angeles County and at any of Defendants' other facilities throughout California.

7.     The true names and capacities, whether individual, corporate, associate, or whatever else, of the Defendants sued herein as Does 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names under Code of Civil Procedure § 474. Plaintiff is informed and believes and thereon alleges that Defendants designated herein as Does 1 through 50, inclusive, and each of them, are legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as Does 1 through 50 when their identities become known.

8.     Plaintiff is informed and believes and thereon alleges that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, that Defendants carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and that the acts of each Defendant are legally attributable to the other Defendants. Furthermore, Defendants acted in all respects as the employers or joint employers of Employees. Defendants, and each of them, exercised control over the wages, hours or working conditions of Employees, created and implemented the policies and practices that governed the employment of Plaintiff and the Class members and dictated their job duties and responsibilities, or otherwise suffered or permitted Plaintiff and the other Employee Class members to work, or engaged, thereby creating a common law employment relationship, with the Employee Class members. Therefore, Defendants, and each of them, employed or jointly employed the Employee Class members.

## FACTUAL BACKGROUND

9.     The Employees who comprise the Class, including Plaintiff, are non-exempt employees of Defendants pursuant to the applicable Wage Order of the Industrial Welfare Commission ("IWC"). During the period of four years prior to the filing of this action through its resolution, Plaintiff and the Class members were either not paid by Defendants for all hours worked or were not paid at the appropriate minimum, regular and overtime rates. Plaintiff also contends that Defendants failed to pay Plaintiff and the Class members all wages due and owing, including by requiring off the clock work, failed to provide meal and rest breaks, and failed to furnish accurate wage statements and timely pay all wages owed, all in violation of various provisions of the California Labor Code and applicable paragraphs of the IWC Wage Orders.

10.     During the course of Plaintiff and the Class members' employment with Defendants, they were not paid all wages they were owed, including for all work performed (resulting in "off the clock" work) and for all their overtime hours worked. This has resulted in systematic and ongoing violations of the California Labor Code and relevant IWC Wage Orders. Upon information and belief, Defendants employ other non-exempt, hourly employees at their facilities in California. Upon information and belief, Defendants' employment of Plaintiff and the Class members is not governed under a collective bargaining agreement.

11.     Plaintiff and the Class members were generally responsible for providing loading and unloading services to airplanes at their arrival and departure gates, including uploading and unloading baggage and cargo and concessions and other items as necessary, cleaning and preparing airplanes, ramp and equipment operation, guiding airplanes to and from their gates, and performing other ground work and airplane servicing tasks, including fueling and deicing.

12.     Plaintiff worked based out of Defendants' offices situated next to one of the departure gates in the International Terminal at LAX. Plaintiff usually worked five shifts per week. His shifts were generally scheduled to begin at 3:00 p.m. and he would work shifts of eight to twelve hours after arriving, depending on the work volume and the flight schedules. Plaintiff would clock in and out for work shifts and meal periods at the office location by entering his employee ID and scanning his finger. However, in order to arrive at his assigned work location

CLASS ACTION COMPLAINT

1    on time, Plaintiff was required to ensure he was at the airport by at least a half hour before his

2    shift. That time was necessary to ensure that he could find a parking space on the street

3    surrounding the airport or pay for parking at an airport garage, and then take a bus to the terminal

4    entrance. Plaintiff was then required to walk all the way through the terminal, including passing

5    through the security screening requirements for the airport and TSA. After passing through

6    security, Plaintiff would walk all the way through the terminal to his office location near a

7    departure gate in the terminal. While there were smaller lines at times for employees or in the

8    TSA pre line than for regular airline passengers, the security screening procedures would take at

9    least 5 minutes to complete on a good day, and as many as 30 minutes or more to complete when

10   the terminal was particularly busy. Plaintiff also was required to walk for at least ten minutes and

11   often longer to first get to the security screening after entering the terminal and then walk from

12   the security screening to the time clock deep in the airport's busy international terminal.

13          13.    Therefore, Plaintiff was required to endure anywhere from 15 minutes to 30

14   minutes of off the clock work per shift before he was allowed to clock in for his shift at the ATSI

15   offices in the terminal. Defendants allowed Plaintiff and the class members to clock in up to five

16   minutes before their shift start time, but would not compensate them for any of this pre-clocking

17   in time. If Plaintiff and the Class members were even one minute late on their clock in time based

18   on their scheduled start time, they would be counselled and faced discipline. Plaintiff was also not

19   compensated for any time after he clocked out for his shift while remaining under Defendants'

20   control, including all the time it took him to walk back through the terminal and exit the airport

21   facilities, which would take anywhere from an additional five to ten minutes. The distances

22   Plaintiff was required to walk during any meal periods he was able to take in order to return to his

23   assigned ATSI office and clock out and clock in also took anywhere from five to ten additional

24   minutes, and even longer if Plaintiff wanted to leave the airport premises during any meal

25   periods. This also resulted in substantially shortened meal periods, if and when Plaintiff was able

26   to take them.

27

28

-6-

14.    After clocking in for their work shifts, Plaintiff and the Class members would be broken down into teams and assigned to work the various flights ATSI was servicing for that shift. The teams included non-exempt, hourly ramp crew chiefs and supervisors and rampers, and other employees in related and supporting positions, and Plaintiff served in each of these positions during his employment with ATSI. Plaintiff also contends they all performed similar duties for Defendants and were subject to the same policies and practices. Plaintiff and the Class members would then travel to the parking area where equipment such as belt-loaders and carts for unloading airplanes and chock blocks and cones and other work supplies and equipment were stored. They would then travel to and wait at their assigned gates for their assigned airplanes to arrive for loading or unloading, and would assist as necessary in getting the planes situated at the gates and loaded and unloaded, along with other required tasks such as de-icing or fueling and the like.

15.    The schedule for Plaintiff and the Class members would then continue depending on the airplanes assigned and their scheduled arrival. If flights were late, Plaintiff and the Class members were required to wait at the gate for their arrival and perform any tasks they could while waiting. When one airplane was completed, Plaintiff and the Class members would then travel to the next one on their assigned list and repeat the process as necessary. To coordinate all these schedules, Defendants required some employees to carry radios and communicated with them as necessary. Even if a Class member was on a break, he or she was required to respond immediately to any such radio calls. However, for the majority of the work related communications regarding scheduling, and to resolve daily work related issues as they arose, Defendants would communicate regularly and frequently with Plaintiff and the Class members on their personal cellular phones, both when they were on-duty and during off duty hours.

16.    Defendants also relied heavily on sending text messages to individuals and group text messages to communicate daily scheduling issues and regarding other work related matters. All employees were required to participate in these group texts, and they were often sent during off-duty hours or when employees were attempting to take meal periods or rest breaks or were done working for the day. There were many occasions when Plaintiff's cellular phone would be

constantly buzzing and ringing due to group text messages and all the responses being sent. This resulted in further off the clock work where Plaintiff and the class members were under Defendant's control and performing work duties without compensation. Plaintiff, when he worked in a supervisory capacity, was also required to field calls when off duty from Defendants' managers and to prepare and draft shift reports for approximately 10-15 minutes during weeknights. This time was not compensated as hours worked by Defendants, and Defendants failed to reimburse Plaintiff and the Class members for the substantial use of their personal phones and data plans for work-related purposes.

17.     Plaintiff was not paid for all his hours worked at the required minimum, overtime and double time wage rates due to Defendants' policy and practice of requiring him to work off the clock and without pay, including during mandatory security screening procedures. Plaintiff contends that Defendants failed to pay him at the required overtime rate for all hours over eight in a shift, or over forty in a week. With work shifts generally being scheduled for eight hours or more, this unpaid off the clock work resulted in Plaintiff and the Class members working past eight hours on a shift, which required that they be paid at the correct overtime rate of 1.5 times their regular rate. Defendants thus systematically underpaid Plaintiff and the Class members by failing to pay them at the required overtime rates for all hours over eight in a work shift or over forty in a work week, and all hours over twelve in a day at the required double time rate. Upon information and belief, the Class members were bound by similar scheduling and work policies which Defendants required them to follow, and endured similar violations at Defendants' hands as Plaintiff.

18.     Defendants have either failed to maintain timekeeping records for Plaintiff that would permit Plaintiff to discover the nature and extent of the off the clock work Defendants' required and the actual hours Plaintiff worked, or have otherwise declined to produce them to Plaintiff in response to a timely and lawful request. By failing to pay for all hours worked, including for time during security screening procedures, and by deducting time for meal periods that were not lawfully provided, Defendants have committed knowing and intentional ongoing violations of the record keeping requirements under the Labor Code, including section 1174.

19.    Some cities like Los Angeles have enacted local wage ordinances requiring employees working on City contracts to be paid the City's Living Wage (which consists of a cash wage rate and an employer's health benefits contribution), and that they be provided with time off as required by the living wage ordinance (at least 96 compensated hours off and 80 uncompensated hours off). Defendants' above described failure to pay minimum wages for all hours worked has also resulted in ongoing violations of the applicable living wage ordinances for Los Angeles and LAX, including violations of Los Angeles Administrative Code Section 10.37 *et seq.* (e.g. Section 10.37(a) calling for annual adjustments and for living wage rates to be paid for all hours worked at $14.25 per hour with health benefits of $1.25 per hour or $15.50 per hour if health benefits are not provided). For airport employees, such as Plaintiff and the Class member, the living wage and health benefits hourly rates at $15.25 per hour and $5.34 per hour, or $20.59 per hour if no health benefits are provided.

20.    The failure to pay for all hours worked and underpayment of wages to Plaintiff and the Class members is and has been a direct consequence of Defendants' unlawful compensation policies and practices, which applied uniformly to the Class members working at LAX and at other locations throughout California were Defendants have violated any living wage ordinances. By failing to pay Plaintiff and the Class members for all hours worked, and also failing to pay these hours at the required rates under the living wage ordinance, Defendants' conduct violated the City of Los Angeles Administrative Code, Division 10, Chapter 1, Article 11, § 10.37 (and relevant paragraphs of the applicable IWC Wage Orders).

21.    As a result of the above described unlawful requirements to work off the clock, the failure to accurately record all hours worked and pay wages at the correct rates, and the other wage violations they endured at Defendants' hands, Plaintiff and the Class members were not properly paid all wages earned and all wages owed to them by Defendants, including when working more than eight hours in any given day and/or more than forty hours in any given week. As a result of Defendants' unlawful policies and practices, Plaintiff and Class members incurred overtime hours worked for which they were not adequately and completely compensated, in addition to the hours they were required to work off the clock at their regular rates.

22.     Therefore, from at least four years prior to the filing of this lawsuit and continuing to the present, Defendants had a consistent policy or practice of failing to pay Employees for all hours worked, and failing to pay minimum wages for all time worked, as required by California law. Also, from at least four years prior to the filing of this lawsuit and continuing to the present, Defendants had a consistent policy or practice of failing to pay Employees overtime compensation at premium overtime rates for all hours worked in excess of eight hours a day and/or forty hours a week, and double-time rates for all hours worked in excess of twelve hours a day, in violation of Labor Code § 510 and the corresponding sections of IWC Wage Orders.

23.     Defendants also failed to provide Plaintiff and the Class members with their required first and second meal periods, and their first, second, and third required rest breaks. The above described off the clock work contributed to Defendants' common policy of failing to provide lawful meal periods to Plaintiff and the Class members, as required under the Labor Code and Paragraph 11 of the IWC Wage Order(s). Defendants similarly systematically failed to authorize and permit Plaintiff and the employee Class Members to take all required 10-minute rest breaks, as required under the Labor Code and Paragraph 12 of the IWC Wage Order(s).

24.     Plaintiff and the Class members generally worked shifts that entitled them to receive at least one meal period and two to three rest breaks. However, Defendants failed to provide all required meal periods and rest breaks to Plaintiff and the Class members. Breaks were not scheduled by Defendants, and were taken, if at all, only if the work and airplane schedules, and Defendants' policies, permitted it. More specifically, under Defendants uniformly applied policies, Plaintiff and the Class members were required to be at their assigned gate locations for their next assigned airplane by at least 30 minutes before the scheduled flight arrival. Therefore, in order for Plaintiff and the Class members to be able to even attempt to take a meal period, they had to have an open hour on their daily schedule (i.e. 30 minutes for the break plus at the gate 30 minutes before the scheduled flight time). This meant that, if and when Plaintiffs and the Class members were able to take a meal period, they were often well after the required five hour mark of the shift and were impermissibly shortened, or the breaks would be interrupted by radio calls or cellular phone calls and text messages. On shift of over ten hours, which Plaintiff regularly

1  worked, he was not permitted to take a second timely, uninterrupted and duty-free meal period.

2  Plaintiff contends, upon information and belief, that any alleged meal period waivers Defendants

3  elicited from Plaintiff and the Class members were invalid or unenforceable, including on shifts

4  that were for over twelve hours.

5      25.    Defendants also restricted Plaintiff and the Class members and their abilities to

6  leave the airport terminal and airport premises during meal periods. Plaintiff estimates he was not

7  provided with a first meal period on at least three to five occasions per work week, and that any

8  others he did take were late or were for less than 30 minutes or otherwise interrupted by work

9  demands. Plaintiff does not recall ever being provided with a second meal period on a shift.

10 Despite these violations, upon information and belief, Defendants unlawfully and automatically

11 deducted 30 minutes per work shift for unpaid meal period time.

12     26.    By requiring Plaintiff and the Class Members to walk great distances from work

13 sites to clock locations and then to exit the terminals, and to pass through security screening

14 procedures as addressed above upon reentry, Defendants made it virtually impossible for Class

15 members to leave the premises during meal periods due to all the walk and security screening

16 time they had to endure. Defendants did not lengthen breaks to account for the time it took to pass

17 through security when leaving and returning for breaks, and thus imposed a policy which

18 discouraged employees from leaving Defendants' facilities for breaks.

19     27.    Defendants also followed a policy of denying all required timely and duty-free

20 meal periods for 30 minutes in duration by automatically deducting for meal periods which were

21 presumed to have been properly provided while also systematically shortening breaks by

22 requiring Employees to remain under Defendants' control, such as during security screenings.

23 There was no bell system or other set schedule for when Employees were supposed to take meal

24 periods. Every time he took a break by leaving the facility, Plaintiff's meal period was also for

25 substantially less than 30 minutes due to security screening times, and on shifts when Plaintiff

26 worked over ten hours, he was never provided with a second meal period.

27     28.    Defendants thus failed to provide all the legally required unpaid, off-duty meal

28 periods and all the legally required paid, off-duty rest periods to Plaintiff and the other Class

- 11 -
CLASS ACTION COMPLAINT

members, as required by the applicable Wage Order and <u>Labor Code</u>. Defendants did not have a policy or practice which provided or recorded all the legally required unpaid, off-duty meal periods and all the legally required paid, off-duty rest periods to the Plaintiff and the other Class members. Plaintiff and other Class members were required to perform work as ordered by Defendants or otherwise remain under Defendants' control for more than five hours during a shift, or ten hours in a shift, but were often required to do so without receiving a lawful, timely, and duty-free 30-mintue meal break. Additionally, as addressed above, Defendants followed a practice of requiring off the clock work, in a manner that would impact when Employees were to receive meal periods and rest breaks, thus leading to further violations.

29.    As a result, Defendants' failure to provide Plaintiff and the Class members with all legally required off-duty, unpaid meal periods and all the legally required off-duty, paid rest periods is and will be evidenced by Defendants' business records, or lack thereof. Defendants have either failed to maintain required records of when meal periods were actually provided or failed to produce them in response to Plaintiff's timely and lawful requests, or else maintained inaccurate and incomplete records. Defendants also failed to pay Employees "premium pay," i.e. one hour of wages at each Employee's effective hourly rate of pay, for each meal period or rest break that Defendants failed to provide or deficiently provided.

30.    Therefore, for at least four years prior to the filing of this action and through to the present, Plaintiff and the Class members were unable to take off-duty breaks or were otherwise not provided with the opportunity to take required meal breaks due to Defendants' policies and practices. On the occasions when Plaintiff and the Class members were provided with a meal period, it was often untimely or interrupted, or was impermissibly shortened, and Employees were not provided with one (1) hour's wages in lieu thereof. To the extent Defendants assert they paid any meal period premiums, they failed to do so for all violations. Meal period violations thus occurred in one or more of the following manners:

        (a)    Class members were not provided full thirty-minute duty free meal periods for work days in excess of five (5) hours and were not compensated one (1) hour's wages in lieu thereof, all in violation of, among others, <u>Labor Code</u>

§§ 226.7, 512, and the applicable Industrial Welfare Commission Wage Order(s);

(b)     Class members were not provided second full thirty-minute duty free meal periods for work days in excess of ten (10) hours;

(c)     Class members were required to work through at least part of their daily meal period(s);

(d)     Meal periods were provided after five (5) hours of continuous work during a shift; and

(e)     Class members were restricted in their ability to take a full thirty-minute meal period or were otherwise required to remain under Defendants' control during meal periods.

31.     Defendants also failed to authorize and permit Plaintiff and the Class members to take duty-free, net ten (10) minute rest breaks for ever four hours of shift work, or major fraction thereof. There were similar issues with the required net-ten minute rest breaks that Plaintiff and the Class members were unable to take as with meal periods.

32.     By requiring Plaintiff and the Class Members to walk great distances from work sites to clock locations and then to exit the terminals, and to pass through security screening procedures as addressed above upon reentry, Defendants also made it impossible for Plaintiff and the Class members to leave the airport facilities and premises for any ten minute rest breaks, as the entire break would be dedicated to walking and screening time. Defendants did not schedule any required ten minute rest breaks, and Plaintiffs and the Class members were compelled by work requirements and scheduling demands to continue working throughout their shifts without receiving their required first, second, and third rest breaks. On the rest breaks there were authorized and permitted to take, they were often interrupted by radio calls or cellular phone calls and text messages regarding work matters.

33.     Therefore, the job requirements and duties required of Plaintiff and the Class members, and the demands from management and customers, manifested a failure to authorize and permit Class members to take all their required rest breaks. Plaintiff and the other similarly

1 | situated Class members were either not authorized permitted the opportunity to take a rest break,

2 | or were required to remain under Defendants' control and respond to instructions from

3 | management and job and customer demands. Defendants also failed to authorize and permit

4 | employees to leave the premises during rest breaks, or else prevented them from doing so by the

5 | required security screenings, thus further evidencing Defendants' policy and practice of requiring

6 | Plaintiff and the Class members to remain under their control during required off-duty rest

7 | breaks.

8 |       34.     Defendants' policies and practices thus systematically deny and denied Plaintiff

9 | and the Class members full, duty-free ten-minute rest periods and thirty-minute, duty-free meal

10 | periods. The California Supreme Court has instructed that the rest period requirement obligates

11 | employers to permit-and authorizes employees to take-off-duty rest periods. That is, during rest

12 | periods employers must relieve employees of all duties and relinquish control over how

13 | employees spend their time. Plaintiff and the Class members were and are under Defendants'

14 | control when they are working through rest breaks, including by passing through mandatory

15 | screening procedures, and Defendants failed to schedule or account for required first, second, and

16 | third rest breaks during the shifts Plaintiff and the Class members generally worked. Defendants

17 | have also provided either impermissibly shortened or untimely meal and rest breaks to Plaintiff

18 | and the Class members.

19 |       35.     Plaintiff and the Defendants' Employees in the Class were also not authorized and

20 | permitted to take lawful rest periods, were systematically required by Defendants to work through

21 | or during breaks, and were not provided with one (1) hour's wages in lieu thereof. They were

22 | required to remain on-duty during breaks or portions of their breaks, thus making them either

23 | untimely or shortened and on-duty, and they were also prevented from leaving the premises

24 | during rest breaks under Defendants' policies and practices. Rest period violations therefore arose

25 | in one or more of the following manners:

26 |       (a)     Class members were required to work without being provided a minimum

27 |       ten (10) minute rest period for every four (4) hours or major fraction

28 |       thereof worked and were not compensated one (1) hour of pay at their

regular rate of compensation for each workday that a rest period was not provided;

(b)    Class members were not authorized and permitted to take timely rest periods for every four hours worked, or major fraction thereof; and

(c)    Class members were required to remain on-duty and under Defendants' control during rest periods or otherwise had their rest periods interrupted by work demands.

36.    From at least four (4) years prior to the filing of this lawsuit and continuing to the present, Defendants have also consistently violated Labor Code § 221 by unlawfully collecting or deducting the Employees' earned wages, including by the above described off the clock before and after work shifts and automatically deducting 30 minutes of work for unpaid meal periods Defendants failed to provide. By not compensating Employees for all hours worked, and the automatic deductions for unprovided meal periods and failure to pay for hours spent in mandatory security screening procedures, Defendants unlawfully deducted wages earned by and owed to Plaintiff and the Class members, in violation of Labor Code § 221.

37.    As a result of the above described illegal policies and practices, Defendants engaged in and enforced the following additional unlawful practices and policies against Plaintiff and the Class members he seeks to represent:

a.    failing to pay all wages owed to Class members who either were discharged, laid off, or resigned in accordance with the requirements of Labor Code §§ 201, 202, 203;

b.    failing to pay all wages owed to the Class members twice monthly in accordance with the requirements of Labor Code § 204;

c.    failing to pay Class members all wages owed, including all meal and rest period premium wages;

d.    failing to maintain accurate records of Class members' earned wages and meal periods in violation of Labor Code §§ 226 and 1174(d) and section 7 of the applicable IWC Wage Orders; and

e. failing to produce timekeeping records in response to Plaintiff's timely and lawful request to receive them under these authorities.

38. From at least four (4) years prior to the filing of this lawsuit, and continuing to the present, Defendants have also consistently failed to provide Employees with timely, accurate, and itemized wage statements, in writing, as required by California wage-and-hour laws, including by the above-described requirement of off the clock work, failure to pay all overtime, and failure to pay premium wages for unprovided or otherwise unlawful meal and rest breaks. Defendants have also made it difficult to account with precision for the unlawfully withheld wages and meal and rest period compensation owed to Plaintiff and the Class, during the liability period, because they did not implement and preserve a record-keeping method as required for non-exempt employees by California Labor Code §§ 226, 1174(d), and paragraph 7 of the applicable California Wage Orders. Upon information and belief, time clock punches were not maintained or were not accurately maintained for work shifts and meal periods, which were automatically presumed by Defendants to have been lawfully provided when they were not, and which did not include time spent passing through mandatory security screenings. Defendants also failed to accurately record and pay for all regular and overtime hours worked by Plaintiff and the Class members.

39. Defendants have thus also failed to comply with Labor Code § 226(a) by issuing wage statements that inaccurately reported total hours worked and total wages earned by Plaintiff and the Class members, along with the appropriate applicable rates, among others requirements. Plaintiff and Class members are therefore entitled to penalties not to exceed $4,000.00 for each employee pursuant to Labor Code § 226(b). Defendants have also failed to comply with paragraph 7 of the applicable California IWC Wage Orders by failing to maintain time records showing when the employee begins and ends each work period, meal periods, wages earned pursuant to Labor Code § 226.7, and total daily hours worked by itemizing in wage statements all deductions from payment of wages and accurately reporting total hours worked by the Class members.

40. Defendants also required Plaintiff and the Class members to work hours off the clock for which they were not compensated, including time during security screening procedures and during interrupted or otherwise on-duty meal and rest periods. Defendants also failed to pay

CLASS ACTION COMPLAINT

all overtime premium wages owed for work conducted on a work shift and a workday, as addressed above. Therefore, from at least four years prior to filing this lawsuit and continuing to the present, Defendants have also followed a uniform and consistent policy of failing to pay all wages owed to Plaintiff and other similarly situated Employees at the time of their termination or within seventy-two (72) hours of their resignation, as required by California wage-and-hour laws. In view of the above addressed violations, Defendants have also failed to pay all wages owed to Plaintiff and the Class members twice monthly in accordance with the requirements of Labor Code § 204.

41.    Additionally, from at least four years prior to the filing of this lawsuit and continuing to the present, Defendants have regularly required Plaintiff and the Class members to incur necessary business expenses in the course of performing their required job duties. Plaintiff and the Class members were often required by Defendants to receive, review, and respond to work related cellular phone calls and text messages when they were on-duty and off-duty, as detailed above. However, Defendants failed to reimburse Plaintiff and the Class members for any of their expenses related to their personal cellular phones and data usage. Plaintiff's monthly cellular phone bill during his employment was for $120.00, and Plaintiff estimates that at least 75% of the calls he received and made and text messages he received and responded to were for work-related matters. Plaintiff and the Class members must be reimbursed for these necessary business expenses under Labor Code § 2802.

42.    In light of the foregoing, Plaintiff and the Employees in the Class bring this action pursuant to, *inter alia*, Labor Code §§ 201, 202, 203, 204, 218, 218.5, 218.6, 221, 226, 226.7, 510, 511, 512, 558, 1174, 1185, 1194, 1194.2, 1197, and 2802, and California Code of Regulations, Title 8, section 11000 *et seq.*

43.    Furthermore, pursuant to Business and Professions Code §§ 17200-17208, Plaintiff and the Class members seek injunctive relief, restitution, and disgorgement of all benefits Defendants have enjoyed from their violations of Labor Code and the other unfair, unlawful, or fraudulent practices alleged in this Complaint.

## CLASS ALLEGATIONS

44.    Plaintiff brings this class action on behalf of himself an all others similarly situated pursuant to Code of Civil Procedure § 382. Plaintiff seeks to represent a Class (or "the Class" or "Class members") defined as follows: "All individuals employed by Defendants at any time during the period of four (4) years prior to the filing of this lawsuit and ending on a date as determined by the Court ("the Class Period"), and who have been employed as non-exempt, hourly airport services employees based out of Defendants' facilities and offices within the State of California." Further, Plaintiff seeks to represent the Subclasses composed of and defined as follows:

a.    Subclass 1.  Minimum Wages Subclass. All Class members who were not compensated for all hours worked for Defendants at the applicable minimum wage.

b.    Subclass 2.  Wages and Overtime Subclass. All Class members who were not compensated for all hours worked for Defendants at the required rates of pay, including for all hours worked in excess of eight in a day and/or forty in a week.

c.    Subclass 3.  Meal Period Subclass. All Class members who were subject to Defendants' policy and/or practice of failing to provide unpaid 30-minute uninterrupted and duty-free meal periods or one hour of pay at the Employee's regular rate of pay in lieu thereof.

d.    Subclass 4.  Rest Break Subclass. All Class members who were subject to Defendants' policy and/or practice of failing to authorize and permit Employees to take uninterrupted, duty-free, 10-minute rest periods for every four hours worked, or major fraction thereof, and failing to pay one hour of pay at the Employee's regular rate of pay in lieu thereof.

e.    Subclass 5.  Wage Statement Subclass. All Class members who, within the applicable limitations period, were not provided with accurate itemized wage statements.

f.    Subclass 6.  Unauthorized Deductions from Wages Subclass. All Class members who were subject to Defendants' policy and/or practice of deducting wages earned from their pay, including by requiring off the clock work.

g.    Subclass 7.  Failure to Timely Pay Wages Twice Monthly Subclass. All Class members who were subject to Defendants' policy and practice of not timely paying all wages

1    earned when they were due and payable at least twice monthly.

2         h.    Subclass 8.  Termination Pay Subclass. All Class members who, within the

3    applicable limitations period, either voluntarily or involuntarily separated from their employment

4    and were subject to Defendants' policy and/or practice of failing to timely pay wages upon

5    termination.

6         i.    Subclass 9. Expense Reimbursement Subclass. All Class members who incurred

7    necessary and reasonable expenses in connection with performing their job duties for Defendants

8    and who were subject to a policy and/or practice under which such expenses were not reimbursed.

9         j.    Subclass 10.  UCL Subclass. All Class members who are owed restitution as a

10   result of Defendants' business acts and practices, to the extent such acts and practices are found to

11   be unlawful, deceptive, and/or unfair.

12        45.    Plaintiff reserves the right under California Rule of Court 3.765 to amend or

13   modify the class description with greater particularity or to provide further division into subclasses

14   or limitation to particular issues. To the extent equitable tolling operates to toll claims by the Class

15   against Defendants, the Class Period should be adjusted accordingly.

16        46.    Defendants, as a matter of company policy, practice and procedure, and in violation

17   of the applicable Labor Code, Industrial Welfare Commission ("IWC") Wage Order requirements,

18   and the applicable provisions of California law, intentionally, knowingly, and willfully, engaged

19   in a practice whereby Defendants failed to correctly calculate and pay compensation for the time

20   worked by the Plaintiff and the other members of the Class, even though Defendants enjoyed the

21   benefit of this work, required Employees to perform this work and permitted or suffered to permit

22   this work. Defendants have uniformly denied these Class members wages to which these

23   employees are entitled, and failed to provide meal periods or authorize and permit rest periods, in

24   order to unfairly cheat the competition and unlawfully profit.

25        47.    This action has been brought and may properly be maintained as a class action

26   under the provisions of Code of Civil Procedure § 382 because there is a well-defined community

27   of interest in this litigation and the proposed Class is easily ascertainable from the employment

28   records for Plaintiff and the Class members that Defendants are required to maintain under

California law.

**A.    Numerosity**

48.    The potential members of the Class as defined are so numerous that joinder of all the Class members is impracticable. While the precise number of Class member has not been determined at this time, Plaintiff is informed and believes that Defendants employ or, during the time period relevant to this lawsuit employed, hundreds of Employees who satisfy the Class definition within the State of California. Plaintiff alleges that Defendants' employment records will provide information as to the number and location of all Class members.

**B.    Commonality**

49.    There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. The common questions are numerous and substantial and flow from Defendants' uniform policies and/or practices of violating the California Labor Code addressed above. As such, these common questions predominate over individual questions concerning each individual Class Member's showing as to his or her eligibility for recovery or as to the amount of damages. These common questions of law and fact include:

a.    Whether Defendants failed to pay Employees minimum wages;

b.    Whether Defendants failed to pay Employees wages for all hours worked;

c.    Whether Defendants failed to pay Employees overtime as required under Labor Code § 510;

d.    Whether Defendants violated Labor Code §§ 226.7 and 512, and the applicable IWC Wage Orders, by failing to provide Employees with requisite meal periods or premium pay in lieu thereof;

e.    Whether Defendants violated Labor Code §§ 226.7, and the applicable IWC Wage Orders, by failing to authorize and permit Employees to take requisite rest breaks or provide premium pay in lieu thereof;

f.    Whether Defendants violated Labor Code § 226(a) by providing Employees with inaccurate wage statements;

g.    Whether Defendants violated Labor Code § 221;

h.  Whether Defendants violated <u>Labor Code</u> §§ 201, 202, and 203 by failing to pay wages and compensation due and owing at the time of termination of employment;

i.  Whether Defendants' conduct was willful;

j.  Whether Defendants violated <u>Labor Code</u> § 226 and § 1174 and the IWC Wage Orders by failing to maintain accurate records of Class members' earned wages and work periods;

k.  Whether Defendants violated <u>Labor Code</u> § 1194 by failing to compensate all Employees during the relevant time period for all hours worked, whether regular or overtime;

l.  Whether Defendants violated <u>Labor Code</u> § 204 by failing to pay Employees all wages earned at least twice monthly;

m.  Whether Defendants violated <u>Labor Code</u> § 2802 by failing reimburse necessary business expenses incurred by Employees;

n.  Whether Defendants failed to pay Employees a "living wage" pursuant to City of Los Angeles Administrative Code, Division 10, Chapter 1, Article 11, § 10.37.

o.  Whether Defendants failed to pay/provide Employees with health benefits pursuant to City of Los Angeles Administrative Code, Division 10, Chapter 1, Article 11, § 10.37.

p.  Whether Defendants violated <u>Business and Professions Code</u> § 17200 *et seq.*; and

q.  Whether Employees are entitled to equitable relief pursuant to <u>Business and Professions Code</u> § 17200 *et seq.*

**C.    Typicality**

50.  The claims of the named plaintiff are typical of those of the other Employees. The Employee Class members all sustained injuries and damages arising out of and caused by Defendants' common course of conduct and uniformly applied policies in violation of statutes, as well as regulations, that have the force and effect of law, as alleged herein. Plaintiff's claims for the off the clock work and meal and rest violations he was required to endure are typical of those of the other Class members.

**D.    Adequacy of Representation**

51.    Plaintiff will fairly and adequately represent and protect the interest of the Employee Class members. Counsel who represents Plaintiff and the Employees in the Class are experienced and competent in litigating employment class actions.

**E.    Superiority of Class Action**

52.    A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all Employees is not practicable, and questions of law and fact common to all Employees predominate over any questions affecting only individual Employees. Each Employee in the Class has been damaged and is entitled to recovery by reason of Defendants' illegal policies or practices of failing to compensate Employees properly.

53.    As to the issues raised in this case, a class action is superior to all other methods for the fair and efficient adjudication of this controversy, as joinder of all Class members is impracticable and many legal and factual questions to be adjudicated apply uniformly to all Class members. Further, as the economic or other loss suffered by vast numbers of Class members may be relatively small, the expense and burden of individual actions makes it difficult for the Class members to individually redress the wrongs they have suffered. Moreover, in the event disgorgement is ordered, a class action is the only mechanism that will permit the employment of a fluid fund recovery to ensure that equity is achieved. There will be relatively little difficulty in managing this case as a class action, and proceeding on a class-wide basis will permit Employees to vindicate their rights for violations they endured which they would otherwise be foreclosed from receiving in a multiplicity of individual lawsuits that would be cost prohibitive to them.

54.    Class action treatment will allow those persons similarly situated to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Plaintiff is unaware of any difficulties in managing this case that should preclude class treatment. Plaintiff contemplates the eventual issuance of notice to the proposed Class members that would set forth the subject and nature of the instant action. The Defendants' own business records can be utilized for assistance in the preparation and issuance of the contemplated notices. To the extent that any further notice is required additional media and/or mailings can be used.

55.     Defendants, as prospective and actual employers of the Employees in the Class,
had a special fiduciary duty to disclose to prospective Class members the true facts surrounding
Defendants' pay practices, policies and working conditions imposed upon the similarly situated
Employees as well as the effect of any alleged arbitration agreements that may have been forced
upon them. In addition, Defendants knew they possessed special knowledge about pay practices
and policies, most notably intentionally refusing to pay for all hours actually worked which should
have been recorded in Defendants' pay records and the consequence of the alleged arbitration
agreements and policies and practices on the Employees and Class as a whole.

56.     Plaintiff and the Employees in the Class did not discover the fact that they were
entitled to all pay under the Labor Code until shortly before the filing of this lawsuit nor was there
any discussion about Plaintiff's and the Class' wavier of their Constitutional rights of trial by jury,
to collectively organize and oppose unlawful pay practices under California law as well as obtain
injunctive relief preventing such practices from continuing. As a result, the applicable statutes of
limitation tolled until such time as Plaintiff and the Class members discovered their claims.

## FIRST CAUSE OF ACTION

## FAILURE TO PAY MINIMUM WAGES

### (Against All Defendants)

57.     Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in
full herein.

58.     Defendants failed to pay Employees minimum wages they were owed, including
by their consistent policy of failing to pay Employees for all hours worked. Employees would
work hours and not receive wages, including as alleged above in connection with off the clock
work, including all the time required to remain on duty and under Defendants' control during
security screening procedures and during breaks and due to the work demands placed upon them
by Defendants' management. Defendants also imposed difficult to attain job and shift scheduling
requirements on Plaintiff and the Class members, which resulted in off the clock work and
underpayment of all wages owed to Employees over a period of time, while benefiting
Defendants. During the relevant time period, Defendants thus regularly failed to pay minimum

wages to Plaintiff and the Class members, including by requiring systematic off the clock work. Defendants' uniform pattern of unlawful wage and hour practices manifested, without limitation, applicable to the Class as a whole, as a result of implementing a uniform policy and practice that denied accurate compensation to Plaintiff and the other members of the Class as to minimum wage pay.

59.     In California, employees must be paid at least the then applicable state minimum wage for all hours worked, including under Labor Code § 1197, IWC Wage Order MW-2014, and paragraphs 2(K), 2(S), and 4(A)-4(C) of the applicable IWC Wage Orders. Paragraph 2(H) of the applicable IWC Wage Orders defines "Hours Worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Additionally, pursuant to California Labor Code § 204, other applicable laws and regulations, and public policy, an employer must timely pay its employees for all hours worked. Defendants failed to do so.

60.     California Labor Code § 1197, entitled "Pay of Less Than Minimum Wage" states: "The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful."

61.     The applicable minimum wage rate fixed by the commission for work during the relevant period is found in the Wage Orders.

62.     The minimum wage provisions of California Labor Code are enforceable by private civil action pursuant to Labor Code § 1194(a) which states: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit."

63.     As described in California Labor Code §§ 1185 and 1194.2, any action for wages incorporates the applicable Wage Order of the California Industrial Welfare Commission. Also, California Labor Code §§ 1194, 1197, 1197.1 and those Industrial Welfare Commission Wage Orders entitle non-exempt employees to an amount equal to or greater than the minimum wage for

1  all hours worked. All hours must be paid at the statutory or agreed rate, or at the minimum rate in

2  the absence of a contractually agreed upon one.

3       64.    Defendants' above described failure to pay minimum wages for all hours worked

4  has also resulted in ongoing violations of the applicable living wage ordinances for Los Angeles

5  and LAX, including violations of Los Angeles Administrative Code Section 10.37 *et seq.* (e.g.

6  Section 10.37(a) calling for annual adjustments and for living wage rates to be paid for all hours

7  worked at $14.25 per hour with health benefits of $1.25 per hour or $15.50 per hour if health

8  benefits are not provided. For airport employees, such as Plaintiff and the Class member, the

9  living wage and health benefits hourly rates at $15.25 per hour and $5.34 per hour, or $20.59 per

10 hour if no health benefits are provided.

11      65. .   The underpayment of wages to Plaintiff and the Class members is and has been a

12 direct consequence of Defendants' unlawful compensation policies and practices, which applied

13 uniformly to the Class members working at LAX and at other locations throughout California

14 were Defendants have violated any living wage ordinances. By failing to pay Plaintiff and the

15 Class members for all hours worked, and also failing to pay these hours at the required rates under

16 the living wage ordinance, Defendants' conduct violated the City of Los Angeles Administrative

17 Code, Division 10, Chapter 1, Article 11, § 10.37 (and relevant paragraphs of the applicable IWC

18 Wage Orders). Plaintiff and the Class members are entitled to restitution of their unpaid minimum

19 wages for all hours worked under the living wage ordinances as applicable, including for treble

20 damages given Defendants' willful failure to pay wages under the living wage ordinances.

21      66.    In committing the above described violations of the California Labor Code,

22 Defendants inaccurately recorded, or required Plaintiff and the Class members to input times that

23 did not reflect their actual hours worked, or calculated the correct time worked and consequently

24 underpaid the actual time worked by Plaintiff and other members of the Class, including by

25 requiring off the clock work, as addressed in detail above. Defendants acted in an illegal attempt to

26 avoid the payment of all earned wages, and other benefits in violation of the California Labor

27 Code, the Industrial Welfare Commission requirements and other applicable laws and regulations.

28

As a result of these violations, Defendants also failed to timely pay all wages earned in accordance with California Labor Code § 1194.

67.    California Labor Code § 1194.2 also provides for the following remedies: "In any action under Section 1194 . . . to recover wages because of the payment of a wage less than the minimum wages fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon."

68.    In addition to restitution for all unpaid wages, pursuant to California Labor Code § 1197.1, Plaintiff and Class members are entitled to recover a penalty of $100.00 for the initial failure to timely pay each employee minimum wages, and $250.00 for each subsequent failure to pay each employee minimum wages.

69.    Pursuant to California Labor Code § 1194.2, Plaintiff and Class members are further entitled to recover liquidated damages in an amount equal to wages unlawfully unpaid and interest thereon.

70.    Defendants have the ability to pay minimum wages for all time worked and have willfully refused to pay such wages with the intent to secure for Defendants a discount upon this indebtedness with the intent to annoy, harass, oppress, hinder, delay, or defraud Employees.

71.    Wherefore, Plaintiff and the Employee Class members are entitled to recover the unpaid minimum wages (including double minimum wages), liquidated damages in an amount equal to the minimum wages unlawfully unpaid, interest thereon and reasonable attorney's fees and costs of suit pursuant to California Labor Code § 1194(a). Plaintiff and the other members of the Class further request recovery of all unpaid wages, according to proof, interest, statutory costs, as well as the assessment of any statutory and/or civil penalties against Defendants, in a sum as provided by the California Labor Code, including § 558, and/or other applicable statutes. To the extent minimum wage compensation is determined to be owed to the Class members who have terminated their employment, Defendants' conduct also violates Labor Code §§ 201 and/or 202, and therefore these individuals are also be entitled to waiting time penalties under California Labor Code § 203, which penalties are sought herein on behalf of these Class members. Defendants' failure to timely pay all wages owed also violated Labor Code § 204 for failure to pay

1  all wages owed twice monthly, and resulted in violations of <u>Labor Code</u> § 226 because they

2  resulted in the issuance of inaccurate wage statements. Defendants' conduct as alleged herein was

3  willful, intentional and not in good faith. Further, Plaintiff and other Class members are entitled to

4  seek and recover statutory costs.

5  **SECOND CAUSE OF ACTION**

6  **FAILURE TO PAY WAGES AND OVERTIME UNDER <u>LABOR CODE</u> § 510**

7  **(Against All Defendants)**

8      72.    Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in

9  full herein.

10      73.    California <u>Labor Code</u> § 1194 provides that "any employee receiving less than the

11  legal minimum wage or the legal overtime compensation applicable to the employee is entitled to

12  recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime

13  compensation, including interest thereon, reasonable attorney's fees, and costs of suit." The action

14  may be maintained directly against the employer in an employee's name without first filing a

15  claim with the Division of Labor Standards and Enforcement.

16      74.    By their conduct, as set forth herein, Defendants violated <u>Labor Code</u> § 1194 and

17  <u>Labor Code</u> § 510 (and paragraphs 2(K), 2(S), 3(A) and 4(A)-4(B) of the relevant orders of the

18  Industrial Welfare Commission) by failing to pay Employees: (a) time and one-half their regular

19  hourly rates for hours worked in excess of eight hours in a workday or in excess of forty hours in

20  any workweek or for the first eight hours worked on the seventh day of work in any one

21  workweek; or (b) twice their regular rate of pay for hours worked in excess of twelve hours in any

22  one day or for hours worked in excess of eight hours on any seventh day of work in a workweek.

23  Defendants had a consistent policy of not paying Employees wages for all hours worked,

24  including by requiring off the clock work as addressed above and by under-reporting actual hours

25  worked. With work shifts generally being scheduled for eight hours or more, this unpaid off the

26  clock work resulted in Plaintiff and the Class members working past eight hours on a shift, which

27  required that they be paid at the correct overtime rate of 1.5 times their regular rate.

28

75.    Defendants thus had a consistent policy of not paying Employees wages for all hours worked, including hours at their required regular, overtime, and double-time rates, and as required under applicable living wage ordinances. Defendants required Plaintiff and the Class members to work off the clock to avoid paying all their earned and owed straight time and overtime wages and other benefits, in violation of the California Labor Code, the California Code of Regulations and the IWC Wage Orders and guidelines set forth by the Division of Labor Standards and Enforcement. Defendants have also violated these provisions by requiring Plaintiff and other similarly situated non-exempt employees to work through meal periods when they were required to be clocked out or to otherwise work off the clock to complete their daily job duties or to attend and participate in company required activities or remain under Defendants' control. Therefore, Employees were not properly compensated, nor were they paid overtime rates for hours worked in excess of eight hours in a given day, and/or forty hours in a given week. Based on information and belief, Defendants did not make available to Employees a reasonable protocol for correcting time records when Employees worked overtime hours or to fix incorrect time entries or those that Defendants unlawfully under-recorded to the Employee's detriment.

76.    Defendants' failure to pay Plaintiff and the Class members the unpaid balance of regular wages owed and overtime compensation for all hours worked, as required by California law, violates the provisions of Labor Code §§ 510 and 1198 and paragraph 3(A) of the applicable IWC Wage Order, and is therefore unlawful.

77.    Additionally, Labor Code § 558(a) provides "any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provisions regulating hours and days of work in any order of the IWC shall be subject to a civil penalty as follows: (1) For any violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee." Labor Code § 558(c) states, "the civil penalties provided for in

- 28 -

1  this section are in addition to any other civil or criminal penalty provided by law." Defendants

2  have violated provisions of the <u>Labor Code</u> regulating hours and days of work as well as the IWC

3  Wage Orders. Accordingly, Plaintiff and the Class members seek the remedies set forth in <u>Labor</u>

4  <u>Code</u> § 558.

5        78.    Defendants' failure to pay compensation in a timely fashion also constituted a

6  violation of California <u>Labor Code</u> § 204, which requires that all wages shall be paid

7  semimonthly. From four (4) years prior to the filing of this lawsuit to the present, in direct

8  violation of that provision of the California <u>Labor Code,</u> Defendants have failed to pay all wages

9  and overtime compensation earned by Employees. Each such failure to make a timely payment of

10  compensation to Employees constitutes a separate violation of California <u>Labor Code</u> § 204.

11        79.    Employees have been damaged by these violations of California <u>Labor Code</u> §§

12  204 and 510 (and the relevant orders of the Industrial Welfare Commission). Additionally, under

13  <u>Labor Code</u> § 1199(a)-(c), it is a misdemeanor and Defendants are subject to a fine of not less

14  than $100 for causing Employees "to work for longer hours than those fixed, or under conditions

15  of labor prohibited by an order of the commission" or if the employer pays "a wage less than the

16  minimum fixed by an order of the commission" or "violates...any provision of this chapter or

17  any order or ruling of the commission."

18        80.    Consequently, pursuant to the California <u>Labor Code</u>, including <u>Labor Code</u> §§

19  204, 510, 558, 1174, 1194, 1198, 1199, and the relevant paragraphs of the IWC Wage Orders,

20  including paragraphs 2(K), 2(S), 3(A), 4, and 20, Defendants are liable to Employees for the full

21  amount of all their unpaid wages and overtime compensation for all their hours worked, with

22  interest, plus their reasonable attorneys' fees and costs, as well as the assessment of any statutory

23  penalties against Defendants, and each of them, and any additional sums as provided by the

24  <u>Labor Code</u> and/or other statutes.

25  ///

26  ///

27  ///

28

### THIRD CAUSE OF ACTION

### MEAL-PERIOD LIABILITY UNDER <u>LABOR CODE</u> § 226.7

### (Against All Defendants)

81.    Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in full herein.

82.    Employees regularly worked shifts greater than five (5) hours and in most instances, greater than ten (10) hours. Pursuant to <u>Labor Code</u> § 512, and paragraph 11 of the applicable IWC Wage Order, an employer may not employ someone for a shift of more than five (5) hours without providing him or her with a meal period of not less than thirty (30) minutes or for a shift of more than ten (10) hours without providing him or her with a second meal period of not less than thirty (30) minutes.

83.    Defendants failed to provide Employees with meal periods as required under the <u>Labor Code</u> and paragraph 11 of the applicable IWC Wage Order. Employees were often required to work or to otherwise remain under Defendants' control during meal periods, or Defendants provided them after Employees worked beyond the fifth hour of their shifts or Employees otherwise had them shortened and interrupted by work demands and requirements to remain under Defendants' control during security screening procedures. Furthermore, upon information and belief, on the occasions when Employees worked more than ten hours in a given shift, they did so without receiving a second uninterrupted thirty minute meal period as required by law.

84.    Defendants thus failed to provide Plaintiff and the Class members with meal periods as required by the <u>Labor Code</u> and paragraph 11 of the applicable IWC Wage Order, including by not providing them with the opportunity to take meal breaks, by providing them late or for less than thirty (30) minutes, or by requiring them to perform work during breaks.

85.    Moreover, Defendants failed to compensate Employees for each meal period not provided or inadequately provided, as required under <u>Labor Code</u> § 226.7 and paragraphs 11 and 20 of the applicable IWC Wage Orders, which provide that, if an employer fails to provide an employee a meal period in accordance with this section, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the meal

period is not provided. Defendants failed to compensate the Employees in the Class for each meal period not provided or inadequately provided, as required under Labor Code § 226.7 and paragraphs 11 and 20 of the applicable IWC Wage Order.

86. Therefore, pursuant to Labor Code § 226.7 and paragraphs 11 and 20 of the applicable IWC Wage Order, Employees in the Class are entitled to damages in an amount equal to one (1) hour of wages at their effective hourly rates of pay for each meal period not provided or deficiently provided, a sum to be proven at trial, as well as the assessment of any statutory penalties against the Defendants, and each of them, in a sum as provided by the Labor Code and other statutes and applicable IWC Wage Order paragraphs.

## FOURTH CAUSE OF ACTION

## REST-BREAK LIABILITY UNDER LABOR CODE § 226.7

### (Against All Defendants)

87. Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in full herein.

88. Labor Code §§ 226.7 and paragraph 12 of the applicable IWC Wage Orders provide that employers must authorize and permit all employees to take rest periods at the rate of ten (10) minutes net rest time per four (4) work hours.

89. Employees consistently worked consecutive four (4) hour shifts and were generally scheduled for shifts of greater than 3.5 hours total, thus requiring Defendants to authorize and permit them to take rest periods. Pursuant to the Labor Code and paragraph 12 of the applicable IWC Wage Order, Employees were entitled to paid rest breaks of not less than ten (10) minutes for each consecutive four (4) hour shift, and Defendants failed to provide Employees with timely rest breaks of not less than ten (10) minutes for each consecutive four (4) hour shift. Employees were often required to work or to otherwise remain under Defendants' control during rest periods, and had breaks provided untimely as a result of the above described off the clock work. Plaintiff and the Class members were also not permitted to leave their work premises during rest breaks, as Defendants made no efforts to extend breaks to account for the time required to pass through security screening procedures.

90.    Labor Code §§ 226.7 and paragraphs 12 and 20 of the applicable IWC Wage Orders provide that if an employer fails to provide an employee rest period in accordance with this section, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided.

91.    Defendants, and each of them, have therefore intentionally and improperly denied rest periods to Plaintiff and the Class members in violation of Labor Code §§ 226.7 and 512 and paragraph 12 of the applicable IWC Wage Orders.

92.    Defendants failed to authorize and permit Plaintiff and the Class members to take rest periods, as required by the Labor Code. Moreover, Defendants did not compensate Employees with an additional hour of pay at each Employee's hourly rate for each day that Defendants failed to provide them with adequate rest breaks, as required under Labor Code § 226.7 and paragraphs 12 and 20 of the applicable IWC Wage Orders.

93.    Therefore, pursuant to Labor Code § 226.7 and paragraphs 12 and 20 of the applicable IWC Wage Orders, Employees are entitled to damages in an amount equal to one (1) hour of wages at their effective hourly rates of pay for each day worked without the required rest breaks, a sum to be proven at trial, as well as the assessment of any statutory penalties against Defendants, and each of them, in a sum as provided by the Labor Code and/or other statutes.

## FIFTH CAUSE OF ACTION

## VIOLATION OF LABOR CODE § 226(a)

### (Against All Defendants)

94.    Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in full herein.

95.    California Labor Code § 226(a) requires an employer to furnish each of his or her employees with an accurate, itemized statement in writing showing the gross and net earnings, total hours worked, and the corresponding number of hours worked at each hourly rate; these statements must be appended to the detachable part of the check, draft, voucher, or whatever else serves to pay the employee's wages; or, if wages are paid by cash or personal check, these statements may be given to the employee separately from the payment of wages; in either case the

employer must give the employee these statements twice a month or each time wages are paid.

96.     Defendants failed to provide Plaintiff and the similarly situated Employee Class members with accurate itemized wage statements in writing, as required by the Labor Code and paragraph 7 of the applicable IWC Wage Orders. Specifically, the wage statements given to Employees by Defendants failed to accurately account for wages, overtime, and premium pay, including by failing to pay for all hours worked when passing through security screenings, failure to pay for all overtime hours worked and for providing deficient meal periods and rest breaks, all of which Defendants knew or reasonably should have known were owed to the Employees, as alleged above.

97.     Throughout the liability period, Defendants intentionally failed to furnish to Plaintiff and the Class members, upon each payment of wages, itemized statements accurately showing: (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate units earned and any applicable piece rate paid on a piece-rate basis, (4) all deductions, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee pursuant to Labor Code § 226 and paragraph 7 of the applicable IWC Wage Orders, amongst other statutory requirements. Defendants knowingly and intentionally failed to provide Plaintiff and the Class members with such timely and accurate wage and hour statements.

98.     Plaintiff and the Class members suffered injury as a result of Defendants' knowing and intentional failure to provide them with the wage and hour statements as required by law and are presumed to have suffered injury and entitled to penalties under Labor Code § 226(e), as the Defendants have failed to provide an accurate wage statement, failed to provide accurate and complete information as required by any one or more of items Labor Code § 226 (a)(1) to (9), inclusive, and the Plaintiff and Class members cannot promptly and easily determine from the wage statement alone one or more of the following: (i) The amount of the gross wages or net

wages paid to the employee during the pay period or any of the other information required to be provided on the itemized wage statement pursuant to items (2) to (4), inclusive, (6), and (9) of subdivision (a), (ii) Which deductions the employer made from gross wages to determine the net wages paid to the employee during the pay period, (iii) The name and address of the employer and, (iv) The name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number. For purposes of Labor Code § 226(e) "promptly and easily determine" means a reasonable person [i.e. an objective standard] would be able to readily ascertain the information without reference to other documents or information.

99.    Additionally, under paragraph 4(B) of the applicable IWC Wage Orders, employers are required "to pay each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, ..." Under Labor Code § 1198, "[t]he employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Plaintiff and the Class members may therefore pursue damages and penalties for violations of Labor Code § 204 and paragraph 4(B) of the applicable IWC Wage Orders, including penalties under paragraph 20 of the applicable IWC Wage Orders.

100.    Therefore, as a direct and proximate cause of Defendants' violation of Labor Code § 226(a) and paragraphs 4(b), 7, and 20 of the applicable IWC Wage Orders, the Employees in the Class suffered injuries, including among other things confusion over whether they received all wages owed them, the difficulty and expense involved in reconstructing pay records, and forcing them to make mathematical computations to analyze whether the wages paid in fact compensated them correctly for all hours worked.

101.    Pursuant to Labor Code §§ 226(a) and 226(e), and paragraph 20 of the applicable IWC Wage Order, Plaintiff and the Employee Class members are entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000) under Section 226(e). They are also entitled to

1    an award of costs and reasonable attorneys' fees.

2                          **SIXTH CAUSE OF ACTION**

3                    **VIOLATION OF LABOR CODE § 221**

4                          **(Against All Defendants)**

5        102.    Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in

6    full herein.

7        103.    Labor Code § 221 provides, "It shall be unlawful for any employer to collect or

8    receive from an employee any part of wages theretofore paid by said employer to said employee."

9    Additionally, pursuant to California Labor Code § 204, other applicable laws and regulations, and

10   public policy, an employer must timely pay its employees for all hours worked. Defendants failed

11   to do so.

12       104.    Defendants unlawfully received and/or collected wages from the Employees in the

13   Class by implementing a policy understating the hours worked by Employees by requiring off the

14   clock work during security screenings and by automatically deducting time for meal periods when

15   they were not lawfully provided, as alleged above.

16       105.    As a direct and proximate cause of the unauthorized deductions, Employees have

17   been damaged, in an amount to be determined at trial.

18                        **SEVENTH CAUSE OF ACTION**

19                    **VIOLATION OF LABOR CODE § 204**

20                          **(Against All Defendants)**

21       106.    Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in

22   full herein.

23       107.    Labor Code § 204 instructs that: "All wages, …earned by any person in any

24   employment are due and payable twice during each calendar month, on days designated in

25   advance by the employer as the regular paydays. Labor performed between the 1st and 15th days,

26   inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month

27   during which the labor was performed, and labor performed between the 16th and the last day,

28   inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following

month." Additionally, the requirements of this section shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period." As detailed above, Defendants maintained a consistently applied policy and practice of not paying all wages earned between the 1st and 15th days of a month between the 16th and 26th day and failed to pay all wages earned between the 16th and the last day of the month between the 1st and 10th day of the following month. This included failing to pay all wages due and owing to Plaintiff and the Class members for all hours they worked and failing to pay all wages earned by not more than seven calendar days following the close of the payroll period.

108. All wages due and owing to Plaintiff and the Class members, including as required under Labor Code § 510, were therefore not timely paid by Defendants. Additionally, wages required by Labor Code § 1194 and other sections became due and payable to each employee in each pay period that he or she was not provided with a meal period or rest period or paid straight or overtime wages to which he or she was entitled.

109. Defendants violated Labor Code § 204 by systematically refusing to timely pay wages due under the Labor Code, as addressed above. Additionally, under paragraph 4(B) of the applicable IWC Wage Orders, employers are required "to pay each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, ..." Under Labor Code § 1198, "[t]he employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Plaintiff and the Class members may therefore pursue damages and penalties for violations of Labor Code § 204 and paragraph 4(B) of the applicable IWC Wage Orders, including penalties under paragraph 20 of the applicable IWC Wage Orders.

110. As a result of the unlawful acts of Defendants, Plaintiff and the Class he seeks to represent have been deprived of wages in amounts to be determined at trial, and they are entitled to recovery of such amounts, plus interest and penalties thereon, attorneys' fees, and costs, pursuant to Labor Code § 210, 218.5, 1194 and 1198, and paragraphs 4(B) and 20 of the applicable IWC Wage Orders.

## EIGTH CAUSE OF ACTION

### VIOLATION OF <u>LABOR CODE</u> § 203

#### (Against All Defendants)

111.    Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in full herein.

112.    Plaintiff and numerous Class members are no longer employed by Defendants; they either quit Defendants' employ or were fired therefrom.

113.    Defendants failed to pay these Employees all wages due and certain at the time of termination or within seventy-two (72) hours of resignation, as addressed in detail above.

114.    The wages withheld from these Employees by Defendants remained due and owing for more than thirty (30) days from the date of separation from employment.

115.    Defendants failed to pay Plaintiff and the Class members without abatement, all wages as defined by applicable California law. Among other things, these Employees were not paid all regular and overtime wages, including by Defendants failing to pay for all hours worked or requiring off the clock work or by unlawfully under-recording time entries to the detriment of Employees, and Defendants failed to pay premium wages owed for unprovided meal periods and rest periods, as further detailed in this Complaint. Defendants' failure to pay said wages within the required time was willful within the meaning of <u>Labor Code</u> § 203.

116.    Additionally, under paragraph 4(B) of the applicable IWC Wage Orders, employers are required "to pay each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, …" Under <u>Labor Code</u> § 1198, "[t]he employment of any employee for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful." Plaintiff and the Class members may therefore pursue damages and penalties for violations of <u>Labor Code</u> § 203 and paragraph 4(B) of the applicable IWC Wage Orders, including penalties under paragraph 20 of the applicable IWC Wage Orders.  Also, under <u>Labor Code</u> § 1199(a)-(c), it is a misdemeanor and Defendants are subject to a fine of not less than $100 for causing Employees "to work for longer hours than those fixed, or under conditions of labor prohibited by an order of the commission" or if the

1  employer pays "a wage less than the minimum fixed by an order of the commission" or

2  "violates…any provision of this chapter or any order or ruling of the commission."

3      117.  Defendants' failure to pay wages, as alleged, entitles Plaintiff and these former

4  Employee Class members to penalties under Labor Code § 203 and the applicable paragraphs of

5  the IWC Wage Orders as addressed above, including the requirement that an employee's wages

6  shall continue until paid for up to thirty (30) days from the date they were due.

7                    **NINTH CAUSE OF ACTION**

8      **FOR FAILURE TO REIMBURSE NECESSARY BUSINESS EXPENSES**

9                    **UNDER LABOR CODE § 2802**

10                    **(Against All Defendants)**

11      118.  Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in

12  full herein.

13      119.  Plaintiff and the Class are informed and believe and based thereon allege that

14  throughout the period applicable, Defendants required Plaintiff and the Class members to pay for

15  necessary work related expenses they incurred. Plaintiff and the Class members were often

16  required by Defendants to receive, review, and respond to work related cellular phone calls and

17  text messages when they were on-duty and off-duty, as detailed above.  However, Defendants

18  failed to reimburse Plaintiff and the Class members for any of their expenses related to their

19  personal cellular phones and data usage. Plaintiff's monthly cellular phone bill during his

20  employment was for $120.00, and Plaintiff estimates that at least 75% of the calls he received and

21  made and text messages he received and responded to were for work-related matters.

22      120.  Defendants thus followed a uniform policy and practice of failing to reimburse

23  Employees for these necessary work related expenses or losses incurred in direct discharge of their

24  job duties during employment with Defendants and at the direction of the Defendants pursuant to

25  Labor Code § 2802(a) and the applicable IWC Wage Orders, paragraph 9.

26

27

28

121.    Defendants' knowing and willful failure to reimburse lawful necessary work related expenses and losses to Plaintiff and the Class members resulted in damages because, among other things, Defendants did not inform employees of their right to be reimbursed for those work related expenses. As Defendants failed to inform and misled Plaintiff and the Class members with regard to their rights, Plaintiff and the Class members were led to believe that incurring those lawful and necessary expenses was an expected and essential function of their employment with Defendants and that failure to incur those expenses would have adverse consequences on their employment.

122.    Therefore, Plaintiff and the Class members are entitled to reimbursement for any and all necessary work related expenses, as provided for in Labor Code § 2802(b) and paragraph 9 of the applicable IWC Wage Orders, incurred during the direct discharge of their duties while employed by Defendants, as well as accrued interest on those expenses that were not reimbursed from the date Plaintiff and the Class members incurred those expenses. Further, Plaintiff and the Class members are entitled to costs and attorney's fees pursuant to Labor Code § 2802(c).

## TENTH CAUSE OF ACTION

## VIOLATION OF BUSINESS & PROFESSIONS CODE § 17200 *ET SEQ.*

### (Against All Defendants)

123.    Plaintiff re-alleges and incorporates all preceding paragraphs, as though set forth in full herein.

124.    Plaintiff, on behalf of himself, the Employees in the Class, and the general public, brings this claim pursuant to Business & Professions Code § 17200 *et seq.* The conduct of Defendants as alleged in this Complaint has been and continues to be unfair, unlawful, and harmful to Employees and the general public. Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

125.    Plaintiff is a "person" within the meaning of Business & Professions Code § 17204, has suffered injury, and therefore has standing to bring this cause of action for injunctive relief, restitution, and other appropriate equitable relief.

126.    Business & Professions Code § 17200 *et seq.* prohibits unlawful and unfair business practices. By the conduct alleged herein, Defendants' practices were deceptive and fraudulent in that Defendants' policy and practice failed to provide the required amount of compensation for missed meal and rest breaks, and failed to adequately compensate Plaintiff and Class members for all hours worked, due to systematic business practices as alleged herein that cannot be justified, pursuant to the applicable California Labor Code and Industrial Welfare Commission requirements in violation of California Business and Professions Code §§ 17200, *et seq.,* and for which this Court should issue injunctive and equitable relief, pursuant to California Business & Professions Code § 17203, including restitution of wages wrongfully withheld.

127.    Wage-and-hour laws express fundamental public policies. Paying employees their wages and overtime, providing them with meal periods and rest breaks, etc., are fundamental public policies of California. Labor Code § 90.5(a) articulates the public policies of this State vigorously to enforce minimum labor standards, to ensure that employees are not required or permitted to work under substandard and unlawful conditions, and to protect law-abiding employers and their employees from competitors who lower costs to themselves by failing to comply with minimum labor standards.

128.    Defendants have violated statutes and public policies. Through the conduct alleged in this Complaint Defendants have acted contrary to these public policies, have violated specific provisions of the Labor Code, and have engaged in other unlawful and unfair business practices in violation of Business & Professions Code § 17200 *et seq.*; which conduct has deprived Plaintiff, and all persons similarly situated, and all interested persons, of the rights, benefits, and privileges guaranteed to all employees under the law.

129.    Defendants' conduct, as alleged above, constitutes unfair competition in violation of the Business & Professions Code § 17200 *et seq.*

130.    Defendants, by engaging in the conduct herein alleged, by failing to pay wages and overtime and tips, failing to provide meal periods and rest breaks, etc., either knew or in the exercise of reasonable care should have known that their conduct was unlawful; therefore their conduct violates the Business & Professions Code § 17200 *et seq.*

131.    By the conduct alleged herein, Defendants have engaged and continue to engage in a business practice which violates California and federal law, including but not limited to, the applicable Industrial Wage Order(s), the California Code of Regulations, and the California Labor Code including Sections 204, 226, 226.7, 510, 512, 1194, 1197, and 1198 for which this Court should issue declaratory and other equitable relief pursuant to California Business & Professions Code § 17203 as may be necessary to prevent and remedy the conduct held to constitute unfair competition, including restitution of wages wrongfully withheld.

132.    As a proximate result of the above-mentioned acts of Defendants, Employees have been damaged, in a sum to be proven at trial.

133.    Unless restrained by this Court Defendants will continue to engage in such unlawful conduct as alleged above. Pursuant to the Business & Professions Code, this Court should make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use by Defendants or their agents or employees of any unlawful or deceptive practice prohibited by the Business & Professions Code, including but not limited to the disgorgement of such profits as may be necessary to restore Employees to the money Defendants have unlawfully failed to pay.

## RELIEF REQUESTED

WHEREFORE, Plaintiff prays for the following relief:

1.    For an order certifying this action as a class action;

2.    For compensatory damages in the amount of the unpaid minimum wages for work performed by Employees and unpaid overtime compensation from at least four (4) years prior to the filing of this action, as may be proven;

3.    For liquidated damages in the amount equal to the unpaid minimum wage and interest thereon, from at least four (4) years prior to the filing of this action, according to proof;

4.    For compensatory damages in the amount of all unpaid wages, including overtime and double-time pay, as may be proven;

5.    For compensatory damages in the amount of the hourly wage made by Employees for each missed or deficient meal period where no premium pay was paid therefor from four (4) years prior to the filing of this action, as may be proven;

6.    For compensatory damages in the amount of the hourly wage made by Employees for each day requisite rest breaks were not provided or were deficiently provided where no premium pay was paid therefor from at least four (4) years prior to the filing of this action, as may be proven;

7.    For penalties pursuant to Labor Code § 226(e) for Employees, as may be proven;

8.    For restitution and/or damages and penalties for Defendants' failure to pay all wages due twice monthly under Labor Code § 204, as may be proven;

9.    For restitution and/or damages for all amounts unlawfully withheld from the wages for all class members in violation of Labor Code § 221, as may be proven;

10.    For penalties pursuant to Labor Code § 203 for all Employees who quit or were fired in an amount equal to their daily wage times thirty (30) days, as may be proven;

11.    For damages and restitution for failure to reimburse all reasonable and necessary business expenses incurred by Employees as required by Labor Code § 2802, as may be proven;

12.    For liquidated damages pursuant to California Labor Code 1194.2(a) for failure to pay minimum wage;

13.    For restitution for unpaid minimum wages and treble damages against Defendants for failure to pay minimum wages as required under City of Los Angeles Administrative Code, Division 10, Chapter 1, Article 11, § 10.37;

14.    For restitution for unfair competition pursuant to Business & Professions Code § 17200 *et seq.*, including disgorgement or profits, as may be proven;

15.    For an order enjoining Defendants and their agents, servants, and employees, and all persons acting under, in concert with, or for them, from acting in derogation of any rights or duties adumbrated in this Complaint;

16.    For other wages and penalties under the Labor Code as may be proven;

17.    For all general, special, and incidental damages as may be proven;

CLASS ACTION COMPLAINT

18.    For an award of pre-judgment and post-judgment interest;

19.    For an award providing for the payment of the costs of this suit;

20.    For an award of attorneys' fees; and

21.    For such other and further relief as this Court may deem proper and just.


DATED:  November 20, 2019                    DAVID YEREMIAN & ASSOCIATES, INC.

                                             By _____
                                                David Yeremian
                                                Alvin B. Lindsay
                                                Attorneys for Plaintiff DARIUS MAYES
                                                and all others similarly situated

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of his claims by jury to the extent authorized by law.

DATED: November 20, 2019

DAVID YEREMIAN & ASSOCIATES, INC.

By _____

David Yeremian
Alvin B. Lindsay
Attorneys for Plaintiff DARIUS MAYES
and all others similarly situated

- 44 -
CLASS ACTION COMPLAINT

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>**11/21/2019**<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ Steve Drew _____ Deputy |
| NOTICE OF CASE ASSIGNMENT<br><br>UNLIMITED CIVIL CASE | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER:<br>19STCV41870 |

### THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✔ | Yvette M. Palazuelos | 9 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record       Sherri R. Carter, Executive Officer / Clerk of Court

on 11/21/2019 _____
  (Date)                                          By Steve Drew _____, Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06         **NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1.  The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

    a.  Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b.  Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c.  Exchange of names and contact information of witnesses;

    d.  Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e.  Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f.  Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g.  Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
   (INSERT DATE)                          (INSERT DATE)
   complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➤  _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)
Date:

_____          ➤  _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)
Date:

_____          ➤  _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____          ➤  _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)
Date:

_____          ➤  _____
        (TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.: <br> E-MAIL ADDRESS (Optional): <br> ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a. The party requesting the Informal Discovery Conference will:

       i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

       ii. Include a brief summary of the dispute and specify the relief requested; and

       iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b. Any Answer to a Request for Informal Discovery Conference must:

       i. Also be filed on the approved form (copy attached);

       ii. Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

      iii.    Be filed within two (2) court days of receipt of the Request; and

      iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

   c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

   d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

   e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date: _____

_____
(TYPE OR PRINT NAME)

➢ (ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➢ (ATTORNEY FOR _____ )

Date: _____

_____
(TYPE OR PRINT NAME)

➢ (ATTORNEY FOR _____ )

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                         FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| INFORMAL DISCOVERY CONFERENCE<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

    ☐   Request for Informal Discovery Conference
    ☐   Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (Insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES** | | |
| COURTHOUSE ADDRESS: | | |
| PLAINTIFF: | | |
| DEFENDANT: | | |
| **STIPULATION AND ORDER – MOTIONS IN LIMINE** | CASE NUMBER: | |

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                    (ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____          _____
                                                                    JUDICIAL OFFICER



# Superior Court of California, County of Los Angeles

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control** with the parties: Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR:

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

How to arrange mediation in Los Angeles County

Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a) The Civil Mediation Vendor Resource List

Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

• JAMS, Inc. Case Manager (213) 253-9776 mdawson@jamsadr.com
• Mediation Center of Los Angeles Case Manager: (833) 476-9145 info@mediationLA.org

These organizations cannot accept every case and they may decline cases at their discretion.
Visit www.lacourt.org/ADR.ResList for important information and FAQs before contacting them.
NOTE: This service is not available for family law, probate or small claims.

b) Los Angeles County Dispute Resolution Programs
https://wdacs.lacounty.gov/programs/drp/
• Free, day-of-trial mediations at the courthouse for small claims, unlawful detainers (evictions) and at the Stanley Mosk Courthouse, limited civil. No appointment needed.
• Free or low-cost mediations before the day of trial for these and other case types.
• For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit
http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c) Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit  http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

Los Angeles Superior Court ADR website:  www.lacourt.org/division/civil/settlement
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

LASC2